# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| INVASIX, INC. d/b/a INMODE ) | | C.A. No. : 5:20-cv-1135 |
| ) | | |
| Plaintiff, ) | | **JURY TRIAL DEMANDED** |
| ) | | |
| v. ) | | |
| ) | | |
| DANIEL ALLMOND ) | | |
| ) | | |
| Defendant. ) | | |
| _____) | | |

## ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Invasix, Inc. d/b/a InMode ("Plaintiff" or "InMode"), by and through its undersigned counsel, complains of Defendant Daniel Allmond's ("Defendant") conduct and alleges upon information and belief as to Defendant's acts as follows:

## NATURE OF THIS ACTION

1.      This is an action for trademark infringement and false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as related state law claims arising from Defendant's improper use of trademarks owned or used by InMode, breach of contract, and conversion of InMode property.

2.      As described in more detail below, Defendant's sale of InMode Demo Products as new, genuine InMode Products without authorization infringes upon the trademarks owned or used by InMode and constitutes false advertising. As a result of Defendant's actions, InMode is suffering a loss of the enormous goodwill that it has created in its trademarks and is losing profits from lost sales of products. Defendant's conduct has produced, and unless enjoined by

this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of InMode.

3.      Additionally, Defendant's sale of InMode Demo Products not intended for sale without authorization constitutes a breach of the Employment Agreement entered into between InMode and Defendant as well as conversion of InMode's property.

4.      Defendant's conduct threatens to harm and has harmed the health of consumers. Accordingly, this action seeks permanent injunctive relief and damages for Defendant's improper use of trademarks owned or used by InMode, breach of contract, and conversion.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

6.      This Court has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Defendant is subject to personal jurisdiction in the State of Texas and this District because he resides in the State of Texas.  Additionally, Defendant is subject to personal jurisdiction in the State of Texas and this District because: (a) Defendant has sold products into the State and this District; (b) Defendant has caused tortious injury to InMode's trademarks within the State and this District; (c) Defendant practices the unlawful conduct complained of herein, in part, within the State and this District; and (d) Defendant regularly conducts or solicits business within the State and this District.

ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

8.    Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## PARTIES

9.    Plaintiff Invasix, Inc. d/b/a InMode is a Delaware corporation with its principal place of business in Lake Forest, Orange County, California. InMode develops, manufactures, and markets a line of products and platforms that harness novel radio-frequency (RF) based technology to enable new emerging minimally-invasive procedures and improve existing surgical procedures. InMode markets and sells its platforms and products throughout the world, including the United States of America, under various brands, including, but not limited to, EVOLVE, OPTIMAS, and VASCULAZE (collectively, the "InMode Products").

10.    Defendant Daniel Allmond is an individual residing in the State of Texas.  Upon information and belief, Mr. Allmond currently resides and may be served with process at 18719 Keegans Bluff San Antonio, TX 78258.  Defendant is a former employee of InMode.

## FACTS

*InMode's Trademark Usage*

11.    The U.S. Patent and Trademark Office ("PTO") has issued several registrations for marks used with health products and procedures (hereinafter, the "InMode Marks").  The InMode Marks include, but are not limited to:

ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| Mark | Registration/ Serial No. | Registration / Filing Date | Class/Goods |
|------|--------------------------|----------------------------|-------------|
| INMODE | 6,021,401 | March 31, 2020 | "Medical and aesthetic platform in the nature of medical procedure tables, apparatus and instruments and applicators for skin renewal, body contouring, hair removal, facial rejuvenation and other energy based medical aesthetic non-invasive procedures"<br><br>"Medical and aesthetic treatment services, cosmetic medical treatment services, cosmetic spa services, cosmetic consultant services, skin renewal treatment services, body contouring treatment services, hair removal treatment services, face rejuvenation treatment services, energy-based medical aesthetic non-invasive services" |

12.     The InMode Marks have been in continuous use since at least their respective dates of registration.

13.     InMode advertises, distributes, and sells its products to consumers under the InMode Marks.

14.     InMode has also acquired common law rights in the use of the InMode Marks throughout the United States.

15.     The federal trademark registrations for the InMode Marks were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of the validity of the InMode Marks.

16.     InMode has invested a substantial amount of money and has expended significant time and effort in advertising, promoting, and developing the InMode Marks throughout the United States and the world.  As a result of such advertising and promotion, InMode has established substantial goodwill and widespread recognition in the InMode Marks, and the marks

have become associated exclusively with InMode and its products and procedures by both existing and potential physicians, medical practitioners and customers, as well as the general public at large.

17.    To create and maintain such goodwill among its customers, InMode has taken substantial steps to ensure that products bearing the InMode Marks are of the highest quality.  As a result, the InMode Marks have become widely known and are recognized throughout the United States and the world as symbols of high quality products.

18.    As a result of, *inter alia*, the care and skill exercised by InMode in the conduct of its business, the high quality of the goods sold under the InMode Marks, and the extensive advertising, sale, and promotion by InMode of its products and procedures, the InMode Marks have acquired secondary meaning in the United States and the world, including this District.

***Defendant's Breach of the Employment Agreement***

19.    Defendant was an employee of InMode from November 26, 2018, employed as an Area Sales Manager responsible for South Texas territory.  Defendant was terminated from his employment with InMode on or about June 18, 2019.

20.     During Defendant's employment with InMode, Defendant signed an Employment Agreement, dated November 20, 2018 (hereinafter, the "Employment Agreement").

21.    Pursuant to Sections 2 and 5(f) of the Employment Agreement, Defendant was and is prohibited from engaging in conduct detrimental to InMode, including, but not limited to, the sale of InMode demonstration units, systems, or products (the "Demo Products") not intended for sale.

22.    Section 2 of the Employment Agreement states:

> **Duties.** … During the Employee's employment with the Company
> … the Employee will devote his/her full business time and best

efforts to the faithful performance of such duties and to the *promotion and advancement of the business and affairs of the Company*. (emphasis added)

23.     Moreover, Section 5(f) of the Employment Agreement states:

**Non-Solicitation.**   Without prejudice to the generality of the foregoing, the Employee agrees that during the term and for a period of one year after termination, for any reason, of the Employee's employment, s/he will not, directly or indirectly, for his/her own account or for the account of others … do or participate or assist or allow any of the following:  (i) *solicit or sell products or services that are the same or similar to the business of the Company* to any customer, subscriber or user, or any prospective customer, subscriber or user whose name is contained on any list or records maintained by the Company and (A) whom the Employee solicited or sold services or products on the Company's behalf during the Term, or (B) with whom the Employee had contact on the Company's behalf during the Term …. (emphasis added).

24.     Additionally, pursuant to Section 4(c) of the Employment Agreement, Defendant was obligated to return all property of InMode, including all Demo Products, to InMode upon termination of Defendant's employment with InMode.

25.     Section 4(c) of the Employment Agreement States:

**Return of Company Property.**   On termination of Employee's employment, by either party, the Employee *shall return all Company property, including, without limitation, demonstration units/systems* … and all other items which are the property of the Company ….   *The Employee's obligations under this subsection (c) shall survive termination of this Agreement*. (emphasis added).

26.     Despite these provisions of the Employment Agreement, an investigation has revealed that during the term of Defendant's employment with InMode and thereafter, Defendant has unlawfully gained or retained possession of InMode Products without permission of InMode, and has sold and continues to sell Demo Products not intended for sale to InMode customers who intended to purchase new, genuine InMode Products intended for sale.

27.     Moreover, to sell the Demo Products to InMode's customers, Defendant misrepresented to InMode's customers that the Demo Products were in fact new, genuine InMode Products intended for sale.

28.     For example, in or around the summer of 2019, Defendant negotiated the sale of a Demo Product with a then-existing InMode customer, Glow MedSpa.  Upon Glow MedSpa's inquiry for the purchase of a new InMode VASCULAZE unit, Defendant represented to Glow MedSpa that he could sell them the requested InMode product for $5,000.00.  Glow MedSpa agreed to purchase the InMode product, Serial No. L14811508, from Defendant and paid him $500.00 via Venmo, a mobile payment app.

29.     An investigation in or around September 2019 revealed that the InMode product sold to Glow MedSpa was not a new, genuine InMode VASCULAZE unit, but was rather a Demo Product not intended for sale, and never issued to Allmond, even for temporary use.

30.     Upon information and belief, Defendant has possession of and access to additional InMode Demo Products, including the FORMA APPLICATOR, Serial No. F25410006 and has retained, and continues to market and/or sell the Demo Products to unwitting InMode customers as genuine InMode Products authorized and intended for sale.

31.     InMode has never authorized or otherwise granted Defendant permission to sell any of the Demo Products.

32.     Defendant's sale of Demo Products and misrepresentations that the Demo Products are genuine InMode Products during the term of Defendant's employment with InMode and thereafter constitutes a material breach of Employment Agreement, including, but not limited to, Sections 2, 4(c), and 5(f) of the Employment Agreement.

Original Complaint for Damages and Injunctive Relief

*Likelihood of Confusion and Injury Caused by Defendant's Actions*

33.     Defendant's actions substantially harm InMode by placing Demo Products, which are materially different from new, genuine InMode Products, into the stream of commerce in the United States.

34.     The Demo Products are not intended for distribution or sale.  The Demo Products are materially different from new, genuine InMode Products intended for sale.

35.     Because they are in essence used products, the Demo Products do not operate as effectively as a new, genuine InMode Product intended for sale.  Because the Demo Products are not intended for sale, the Demo Products have not been certified under applicable safety standards.

36.     Because the Demo Products were not in InMode's possession at the time of unauthorized sale, InMode cannot verify the condition of the Demo Products, ensure their safety, conformance with specifications, and functionality.

37.     Defendant's actions substantially harm InMode and its customers who ultimately purchase the Defendant's materially different Demo Products believing them to be new, genuine InMode Products intended for sale.

38.     Defendant's actions substantially harm InMode and its consumers by providing consumers with products that were designed and manufactured to be Demo Products not intended for sale and that were not certified under applicable safety standards.

39.     Moreover, the sale of The Demo Products lessens the sale of new InMode product.

ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

40.     Defendant's conduct results in consumer confusion as well as the dilution of InMode's goodwill and trade name as consumers are not receiving the products they believe they are purchasing.

41.     Defendant's sale of the Demo Products bearing the InMode Marks that are materially different from new, genuine InMode Products intended for sale is likely to cause—and has caused—confusion amongst consumers regarding InMode's sponsorship or approval of the products.

42.     Defendant's actions substantially harm consumers who purchase Defendant's products believing that they are new, genuine InMode Products intended for sale and certified under applicable safety standards as they intended.

43.     The sale of Demo Products interferes with InMode's ability to control the quality of products bearing the InMode Marks.

44.     As a result of Defendant's actions, InMode is suffering the loss of the enormous goodwill it created in the InMode Marks.

45.     Defendant is likely to continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to InMode's irreparable harm.

### COUNT I
### TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

46.     InMode hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

48.     The acts of Defendant alleged herein constitute the use in commerce, without the consent of InMode, of a reproduction, counterfeit, copy, or colorable imitation of the InMode

Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe InMode's rights in the InMode Marks, all in violation of the Lanham Act.

49.     Defendant has used, and continues to use, the InMode Marks in the sale of InMode Demo Products that are not intended for sale and are not certified under applicable safety standards.  Therefore, the products sold by Defendant are materially different from those offered or sold by InMode.

50.     Defendant's infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of such products, and constitute trademark infringement under 15 U.S.C. § 1114.

51.     Defendant's use of the InMode Marks in the sale of materially different products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the InMode Marks, thereby causing immediate, substantial, and irreparable injury to InMode.

52.     As a direct and proximate result of Defendant's actions, InMode has been, and continues to be, damaged by Defendant's activities and conduct.  Defendant has profited thereby, and, unless its conduct is enjoined, InMode's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, InMode is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
## UNFAIR COMPETITION, FALSE ADVERTISING, AND
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125)

53.     InMode hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     This is a claim for federal trademark infringement under 15 U.S.C. § 1125(a).

55.     InMode engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the InMode Marks, throughout the United States.

56.     The InMode Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing InMode's products and procedures.

57.     By selling or distributing products using the InMode Marks that are materially different from those sold by InMode as alleged herein, Defendant is engaging in unfair competition, falsely designating the origin of his goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to InMode and its goods and services in violation of 15 U.S.C. § 1125(a).

58.     By advertising or promoting products using the InMode Marks that are materially different from those sold by InMode as alleged herein, Defendant is misrepresenting the nature, characteristics, qualities, or geographic origin of its goods and services in violation of 15 U.S.C. § 1125(a).

59.     Defendant's continued use of the InMode Marks constitutes the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of 15 U.S.C. § 1125(a)(1)(A).

60.     Defendant has used, and continues to use, the InMode Marks to sell products that are materially different from those sold by InMode in the United States, thereby creating a false designation of origin in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public

ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

deception in the marketplace, and injury to InMode's goodwill and reputation as symbolized by the InMode Marks, for which InMode has no adequate remedy at law.

61.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the InMode Marks, thereby causing immediate, substantial, and irreparable injury to InMode.

62.     By selling and advertising products under the InMode Marks that are materially different from those sold by InMode in the United States, Defendant is using the InMode Marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the public, without InMode's consent.  Defendant is falsely designating the origin of its goods and services and/or falsely representing sponsorship by, affiliation with, or connection to, InMode and its goods and services in violation of 15 U.S.C. 1125(a).  Accordingly, InMode is entitled to a judgment of three times its damages and Defendant's ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

63.     As a direct and proximate result of Defendant's actions, InMode has been, and continues to be, damaged by Defendant's activities and conduct.  Defendant has profited thereby, and unless its conduct is enjoined, InMode's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, InMode is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

**COUNT III**
**BREACH OF CONTRACT**

64.     InMode hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     The Employment Agreement is a valid and binding contract between InMode and Defendant.

66.     InMode fully performed its material obligations under the Employment Agreement at all relevant times herein.

67.     Defendant materially breached and continues to materially breach the Agreement by retaining, marketing and selling InMode's Demo Products not intended for sale to InMode's customers, which is prohibited by the terms of the Employment Agreement.

68.     As a direct and proximate result of Defendant's actions, InMode has been and continues to be injured irreparably and has sustained significant damages in an amount to be determined by the evidence at trial.

69.     Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to InMode unless it is enjoined.

## COUNT IV
## CONVERSION

70.     InMode hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     The Demo Products constitute the property of InMode. The Demo Products are not intended for sale to customers.

72.     Defendant had an obligation to return all InMode property, including Demo Products, upon his resignation or termination from the Company. Defendant had no right, interest, or permission to advertise, market, offer for sale, and/or sell the InMode Demo Products not intended for sale.

73.     By offering for sale and selling the InMode Demo Products, Defendant acted in a fashion inconsistent with InMode's ownership right in the Demo Products.

74.     As a direct and proximate result of Defendant's actions, InMode has been and continues to be injured irreparably and has sustained significant damages in an amount to be determined by the evidence at trial.

75.     Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to InMode unless it is enjoined.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff Invasix, Inc. d/b/a InMode prays for judgment in its favor and against Defendant Daniel Allmond providing the following relief:

1.      For temporary, preliminary, and permanent injunctive relief prohibiting Defendant, its distributors, retailers, agents, employees, representatives, and all persons acting in concert with it, including, but not limited to, any online platform, such as Amazon.com or eBay.com, or any website, website host, website administrator, domain registrar, or internet service provider, from:

   a.      using, or attempting to use, any of the InMode intellectual property, including, but not limited to, the InMode Marks;

   b.      engaging in any false or misleading advertising with respect to InMode Products, which relief includes, but is not limited to, prohibiting the offer for sale or sale of any Demo Products;

   c.      retaining, acquiring, or taking any steps to acquire, any Demo Products;

   d.      advertising, selling, or taking any steps to sell, any Demo Products;

   e.      engaging in any activity constituting unfair competition with InMode; and

ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

f.      inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

2.      For an order requiring Defendant to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of the Demo Products sold by it, including without limitation, the placement of corrective advertisement and providing written notice to the public to cure any residual impacts from Defendant's false advertising;

3.      Adjudge Defendant to have violated 15 U.S.C. § 1114 by infringing upon the InMode Marks;

4.      Adjudge Defendant to have violated 15 U.S.C. § 1125(a) by using false, deceptive, or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Demo Products sold by it;

5.      Adjudge Defendant to have materially breached the Employment Agreement;

6.      Adjudge Defendant to have converted InMode's property;

7.      Award InMode its damages suffered as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117;

8.      Award InMode the disgorgement of Defendant's profits as provided by law pursuant to 15 U.S.C. § 1117;

9.      Award InMode its reasonable attorneys' fees in bringing this action as allowed by law pursuant to 15 U.S.C. § 1117;

10.     Award InMode pre-judgment and post-judgment interest in the maximum amount allowed under the law;

11.     Award InMode the costs incurred in bringing this action; and

12.     Grant InMode such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff Invasix, Inc. d/b/a InMode hereby requests trial by jury on all claims so triable.


Dated: September 23, 2020

Respectfully submitted,

 /s/ *Clayton L. Falls*

**Clayton Falls**
State Bar No. 24047546
Clayton.Falls@klgates.com
**Angela Buchanan**
State Bar No. 24059219
Angela.Buchanan@klgates.com
K&L Gates, LLP
1717 Main Street, Suite 2800
Dallas, Texas  75201
214-939-5500
214-939-5849 (fax)

**ATTORNEYS FOR PLAINTIFF INVASIX,
INC. D/B/A INMODE**