UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

INVASIX, INC.,
*doing business as* **INMODE**,

 *Plaintiff*,

v.                  No. SA-20-CV-01135-JKP

**DANIEL ALLMOND,**

 *Defendant*.

## ORDER GRANTING DEFENDANT TIME TO RESPOND

  Before the Court is a motion for default judgment by Plaintiff Invasix, Inc. d/b/a InMode (InMode) against Defendant Daniel Allmond (Allmond). ECF No. 18.

**I. Background**

  InMode initiated this action against Allmond on September 23, 2020. ECF No. 1. InMode served Allmond on October 6, 2020. ECF No. 10. Allmond failed to respond to the complaint. On November 12, 2020, InMode moved for entry of default, which the Clerk of Court entered the same day. *See* ECF Nos. 12-13. InMode filed its first motion for default judgment on March 16, 2021. ECF No. 16.

  Because that motion included attorney billing records showing that the parties had been engaged in settlement negotiations regarding this case, the Court scheduled a status conference and, after obtaining Defendant's contact information from Plaintiff's counsel, notified both parties of the setting. ECF Nos. 17, 19. Notably, InMode provided no certificate of service showing that it had served written notice of the motion upon Allmond. The Court thus obtained the contact information to provide notice of the conference to Allmond.

Allmond and counsel for InMode each attended the status conference, at which the Court apprised Allmond of the posture of the case and told him that a motion for default judgment was pending. InMode counsel confirmed that it had emailed a copy of the first motion for default judgment to Allmond and that it would email a copy of the live amended motion for default judgment (ECF No. 18) to Allmond after the conference. Like the first motion, the amended motion lacks any certificate of service showing service of any written notice of the motion to Allmond.

When the Court asked Allmond if he intended to formally appear in the case, he stated that he intended to enter the case but he did not know whether he would obtain counsel. The Court informed Allmond that he could find information on proceeding pro se on the Court's website and emphasized that he needed to decide quickly whether he wanted to defend the case pro se or hire an attorney, telling him that if he decided to proceed pro se he needed to file a response (or answer) in the case and if he decided to hire an attorney, that attorney needed to file an appearance. The Court did not set a firm deadline at the status conference but made it clear to Allmond that he needed to take swift action.

The next day, Allmond entered the courthouse and asked to speak with someone in chambers. Court security contacted Courtroom Deputy Muzza. Ms. Muzza told Allmond that if he wanted to file something pro se, he was in the right place, he simply needed to let court security know he was there to file paperwork with the clerk's office, and court security would direct him. Ms. Muzza explained to Allmond that if he hired an attorney, his attorney would know how to file an appearance with the Court. Allmond confirmed his understanding and departed.

By October 5, 2021, Allmond had not filed anything with the Court. The Court, therefore, entered an order setting hearing for November 16, 2021. *See* ECF No. 20. In that Order, the Court also informed Allmond that should he "fail to file an appearance in this case on or before

November 1, 2021, the Court" would rule upon the pending motion for default judgment at the hearing. Allmond did not file anything with the Court by November 1, 2021, or any time prior to the November 16, 2021 hearing.

## II. The November Hearing

On November 15, 2021, Ms. Muzza sent a Zoom invitation to parties that had matters scheduled on the November 16, 2021 docket. As is her custom, on the morning of the docket, Ms. Muzza reached out to any pro se litigant that had not accepted the invitation. On this day, that communication included Allmond. Allmond told Ms. Muzza that he had hired an attorney but needed to get the attorney's contact information. After failed attempts to ascertain the attorney's contact information, Allmond decided to attend the hearing pro se. InMode appeared by counsel.

At the outset, Allmond made an oral motion to continue the hearing for thirty days to allow him to hire counsel. He stated that his attempts at securing counsel have been unsuccessful, he has back surgery scheduled for November 17, and that he did not receive the October 5, 2021 order. He further stated that with an additional thirty days, he would be able to obtain counsel and file a response to InMode's motion for default judgment.

The Court noted that the October 5, 2021 order directed the Clerk's Office to email a copy of the order to Allmond's email address on file with Ms. Muzza and staff notes on the docket reflect that the Clerk's Office emailed the order to Allmond at that email address. Allmond did not contest that the Court has his correct email address. The Court further noted that Allmond has been in contact with Court personnel via email, phone, and in person. And, that Allmond had already had "six weeks" to find counsel since the September status conference.

The Court then heard from InMode's counsel on Allmond's oral motion. InMode objected to the motion on the basis of Allmond's failure to show good cause. First, even though he had

nearly two months to find an attorney (since the September status conference), Allmond was now (at the eleventh hour) requesting more time. Second, the day after the September 22, 2021 status conference—at which Allmond stated he had not received InMode's settlement offer—counsel emailed the offer to Allmond. On September 29, 2021, Allmond responded to InMode counsel that he was going to have an attorney review the offer and get back to him. As of the hearing, counsel had received no response to the settlement offer. Allmond did not contest this statement.

After considering the motion, the record, and the arguments, the Court concluded that the hearing would proceed but the Court would delay entering an order and final judgment to allow Allmond an opportunity to respond in writing, if he so chooses. The Court then ordered that any response by Allmond be filed by 12:00 PM on November 22, 2021.

The Court next informed the parties that InMode's claims for breach of contract and conversion appeared meritorious but had concerns about the trademark infringement and false advertising claims. After hearing InMode's arguments on the trademark infringement and false advertising claims, the Court concluded that InMode's complaint did not sufficiently allege these claims.

Specifically, the allegations as to trademark infringement did not establish what a Demo Product looks like, —*i.e.*, that it is indistinguishable from a new, unused product—nor did they establish that Allmond's sale of the Demo Product was likely to cause confusion, especially given InMode's statement that its Demo Products had been "out in the field," "banged around in cars," and, therefore, "have substantial wear and tear." Rough Tr. of Nov. 16, 2021 hearing. *See Am. Rice, Inc. v. Producers Rice Mill Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (setting forth the elements of a trademark infringement claim and eight "digits of confusion" courts use in determining whether there is a likelihood of confusion).

The allegations as to false advertising did not establish that any statement made by Allmond "deceived or had the capacity to deceive a substantial segment of potential consumers" because the complaint alleged the deception of only one InMode customer, Glow MedSpa. Counsel for InMode conceded that without discovery it would be impossible to know if any other potential consumer or purchaser of InMode products had been deceived by Allmond's statements. *See IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 372 (5th Cir. 2002) (setting forth the elements of a false advertising claim). Accordingly, the Court informed the parties that it appears InMode is entitled to a default judgment on its breach of contract and conversion claims.

The Court then heard InMode's arguments as to damages, costs, attorneys' fees, and injunctive relief. The Court asked Allmond if he would like to orally respond to InMode's arguments. Allmond declined, stating that he would like to respond in writing, preferably through an attorney. The Court then reminded Allmond that any response must be filed by 12:00 noon on November 22, 2021. The Court cautioned Allmond that failure to file a response would not delay the Court's entry of an order and final judgment.

**III. Findings and Conclusions**

Despite his own lack of efforts, Allmond has now attended a status conference and a hearing in this action due in large part to efforts of the Court to assure that he had notice of the court settings and received prompts to appear. While he has hedged on whether he wants to proceed pro se or hire an attorney, he participated in these settings, has asserted his intent to enter the case, and made an oral motion on his own behalf. Accordingly, Allmond is deemed to have "appeared" in this case.[1] **Until an attorney files a formal appearance on Allmond's behalf, Allmond**

---

[1] As a sister court has explained:

> In addressing the question whether a defendant is deemed to have appeared in a case, the Fifth Circuit has stated that "what constitutes an appearance is not 'confined to physical appearances in court

**proceeds with this action pro se. And proceeding pro se makes him responsible for litigating this action, complying with orders of the Court, and making appropriate filings.**

The Court reminds Allmond that information about proceeding pro se may be found on the Court's website: https://www.txwd.uscourts.gov/. Of course, he should also become familiar with the Federal Rules of Civil Procedure and the local rules of this Court (which are also found on the Court's website). The Court also notes that all litigants appearing before this Court have a duty of candor to the Court. *See Watkins v. Session*, No. 19-60810-CIV, 2021 WL 1838902, at *1 n.2 (S.D. Fla. May 7, 2021) (noting that "[e]ven though he's pro se, [the litigant] still owes a duty of candor to the Court"); *Young v. Lacy*, No. CV 1:17-03633, 2020 WL 6471034, at *3 (S.D. W. Va. Nov. 3, 2020), *aff'd*, 848 F. App'x 144 (4th Cir. 2021) (agreeing that "the duty of candor to the court applies across the board"); *Cheatam v. JCPenney Co.*, No. 1:16-CV-00072-MAC, 2016 U.S. Dist. LEXIS 181718, at *9 (E.D. Tex. Nov. 9, 2016) (concluding that the duty of candor "extends to pro

---

or the actual filing of a document in the record.'" Rather, appearances "include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim."

As the Fifth Circuit has further explained, an appearance is an indication "in some way of an intent to pursue a defense," which the court has characterized as "a relatively low threshold." The court has "not construed the phrase 'has appeared in the action' to require the filing of responsive papers or actual in-court efforts by the defendant." Instead, what the court has required in order to constitute a Rule 55(b)(2) "appearance" is, at minimum, that the defendant has engaged in conduct that is "responsive to plaintiff's formal Court action."

Applying that standard, the Fifth Circuit has held that conduct such as a defendant's informing plaintiff's counsel that he was attempting to retain counsel to contest the suit was sufficient to constitute an appearance for purposes of Rule 55(b)(2). The court has also held that a defendant's act of placing a telephone call to plaintiff's attorney, informing the plaintiff's attorney that he intended to contest the suit was sufficient to constitute such an appearance by the defendant within the meaning of Rule 55.

*Van Stry v. McCrea*, No. 2:19-CV-104-WCB, 2019 U.S. Dist. LEXIS 227866, at *3-4 (E.D. Tex. July 12, 2019) (citations and alterations omitted). Applying Fifth Circuit reasoning, Allmond could be deemed to have appeared when he contacted InMode counsel in 2020. InMode counsel's billing records reflect that on October 30, 2020, Caitlin Blanche assessed a response from Allmond. ECF No. 18-3 at 42. The billing records further show Allmond and counsel for InMode communicated and attempted to negotiate settlement through January 2021. *Id.* at 42-104.

se litigants" who must be "held to the same ethical standards as any other party who appears before the court").

**1. Default Judgment**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk [of court] must enter the party's default." Fed. R. Civ. P. 55(a). But "default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989)). Indeed, such orders are "available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank,* 874 F.2d at 276 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Thus, as the decision to enter a default judgment lies within the discretion of the district judge, a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis*, 236 F.3d at 767 (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

A default entered by a clerk of court "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Thomson v. Wooster*, 114 U.S. 104, 111-12 (1885)). However, a defaulting party is deemed to have admitted all well-pled factual allegations in the complaint. *Id.* And when considering a motion for default judgment, the court must determine whether those facts state a claim upon which relief may be granted, as "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.* In addition to the complaint, the court may consider evidence that adds only "factual details," thereby fleshing out

the plaintiff's claim, or that serves as "further proof" of the plaintiff's allegations. *Wooten v. McDonald Trans. Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015). While the complaint in a default judgment is subject to review under Fed. R. Civ. P. 8, courts apply the teachings of *Iqbal* and *Twombly*, which require the substance of the complaint to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and the factual allegations in the complaint to present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

InMode's complaint alleges that Allmond signed an employment agreement with InMode, dated November 20, 2018. Allmond was employed as an area sales manager responsible for the South Texas territory from November 26, 2018, until his termination on or about June 18, 2019. Section 4(c) of the Employment Agreement obligated Allmond to return all property of InMode, including all "Demo Products," to InMode upon termination. Despite this provision, Allmond retained possession of "InMode Products" and sold and continues to sell Demo Products, which are not intended for sale, to InMode customers. In selling the Demo Products, Allmond told InMode's customers that the Demo Products were new, genuine InMode Products.

Specifically, during "the summer of 2019," Allmond negotiated the sale of a Demo Product with a then-existing InMode customer, Glow MedSpa. Upon Glow MedSpa's inquiry for the purchase of a new InMode "Vasculaze" unit, Defendant represented to Glow MedSpa that he could sell this InMode product for $5,000. Glow MedSpa agreed to purchase the InMode product, Serial No. L14811508, from Allmond and paid him $500 via Venmo. That the Vasculaze was a Demo Product rather than a new product was discovered "in or around September 2019." InMode alleges it never issued this specific Demo Product to Allmond, "even for temporary use."

InMode alleges it has a good-faith belief that Allmond has possession of and access to additional InMode Demo Products, including the Forma Applicator, Serial No. F25410006, and has retained, and "continues to market and/or sell the Demo Products" to "unwitting" InMode customers as genuine InMode Products. And that InMode has never authorized Allmond to sell any InMode Demo Products.

These allegations, as supported by the Employment Agreement, filed under seal, state a claim for breach of contract under Texas law. The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). The allegations contained in InMode's Complaint, accepted as true, establish that the parties entered into an Employment Agreement, InMode employed Allmond, Allmond violated his obligations under the Agreement,[2] and InMode suffered damages. Consequently, it appears that **InMode is entitled to a default judgment on its breach of contract claim**.

The allegations in the complaint, supported by the Employment Agreement, also support a claim for conversion under Texas law. A conversion is "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned, had possession of, or entitlement to possession of the property; (2) the defendant,

---

[2] Specifically, Allmond violated section 4(c), which reads, in pertinent part: "On termination of Employee's employment, by either party, the Employee shall return all Company property, including, without limitation, demonstration units/systems . . . ." Employment Agreement, filed under seal.

9

unlawfully and without authorization, assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff demanded return of the property; (4) the defendant refused to return the property; and (5) the plaintiff was injured by the conversion. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.). The allegations contained in InMode's Complaint, accepted as true, establish that InMode had entitlement to its Demo Products and that Allmond retained possession of Demo Products in violation of the Employment Agreement, which required that Allmond return any Demo Products to InMode upon his termination. InMode's Complaint, supported by the Affidavit of Yair Malca (ECF No. 18-1), establishes InMode was injured when Allmond sold a Demo Product to an existing InMode customer (Glow MedSpa). Therefore, it appears that **InMode is entitled to a default judgment on its conversion claim**.

**2. Damages**

Although a default judgment, which is a judgment on the merits, conclusively establishes the defendant's liability, it does not establish the amount of damages. *United States ex rel. MCO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The complaint's factual allegations regarding damages, even if well-pled, must still be proven. *Id.* Damages should not be awarded absent "a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp.* v. *Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Rule 55 "explicitly grants the district court wide latitude" on whether to hold "an evidentiary hearing" on the issue of damages. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also* Fed. R. Civ. P. 55(b)(2)(B). A hearing is not necessary if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation"—meaning, "a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."

*UnitedHealthcare Ins. Co. v. Holley*, 724 F. App'x 285, 289 (5th Cir. 2018) (per curiam) (quoting Fed. R. Civ. P. 55(b); *Freeman*, 605 F.2d at 857). Whether decided on the briefing or after a hearing, the plaintiff has the burden "to bring forth competent evidence in support of the damages that they seek." *Henderson v. Fenwick Protective Inc.*, No. 3:14-CV-505-M-BN, 2015 WL 9582755, at *3 (N.D. Tex. Nov. 23, 2015).

InMode supported its damages request with an affidavit from Yair Malca, Chief Financial Officer for InMode. ECF No. 18-1. Malca attests that Allmond improperly retained a demonstration "Vasculaze" unit, Serial No. L14811508, and a demonstration "Forma Applicator" unit, Serial No. F25410006, and "has sold, and intends to sell, the same to InMode's customers." *Id.* ¶ 3. Malca attests that on July 25, 2019, the date Allmond sold the demonstration "Vasculaze" unit to Glow MedSpa, the market value of a new "Vasculaze" unit was $25,639. *Id.* ¶ 9. And on the date InMode filed its complaint, September 23, 2020, the market value of a new "Forma Applicator" was $19,734. *Id.* ¶ 10. InMode therefore requests damages in the amount of $45,373. *Id.* ¶ 11; ECF No. 18 at 21.

InMode also requests disgorgement of Allmond's $500 profit. InMode would be entitled to this amount if the Court found that there was sufficient basis in the pleadings to support a trademark infringement or false advertising claim. *See* 15 U.S.C. § 1117(a). However, the Court did not find that the allegations in the Complaint supported these claims. Consequently, the Court finds that **InMode is entitled to damages in the amount of $45,373.**

**3. Attorneys' Fees**

With respect to attorneys' fees, InMode's counsel submitted detailed billing records to the Court with a supporting affidavit. ECF No. 18-3. InMode requests attorneys' fees in the amount of $39,469.95. The Employment Agreement between Allmond and InMode provides that in a suit

between the employee and InMode, the prevailing party is entitled to recover reasonable attorneys' fees and costs. Additionally, Texas Civil Practice and Remedies Code § 38.001 provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for… (8) an oral or written agreement." Accordingly, it is appropriate for the Court to consider InMode's request for attorneys' fees.

Having reviewed the billing records, the Court stated that it found $21,345 in attorneys' fees reasonable. The Court further stated that it appeared some of the work was duplicative, specifically, the work of Blanche and Nickerson appeared duplicative of Falls' work and Maidman's work duplicated Brodsky's work. In response, InMode noted that Attorney Blanche is the relationship attorney and Attorney Nickerson is an expert in IP and grey market claims, therefore, the fees attributable to these attorneys, which the Court disallowed, were not necessarily duplicative. Falls otherwise accepted the Court's conclusion as to attorneys' fees. Having considered the evidence and the contention of counsel, the Court finds that **InMode is entitled to $21,345 in attorneys' fees**.

**4. Costs**

InMode requests costs in the amount of $911.07. Federal Rule of Civil Procedure 54(d)(l) instructs that "costs ... should be allowed to the prevailing party." Upon entry of the Court's order, Plaintiff will likely constitute a prevailing party as that term has been explained by the Fifth Circuit. *See Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008). Therefore, in the interest of judicial economy, the Court took up the matter of costs at the hearing.

Upon review of the billing records and the docket, the Court found the $400 filing fee reasonable but the pro hac vice fees ($200) not reasonable as neither Caitlin Blanche nor Morgan Nickerson argued before the Court or filed anything with the Court. Indeed, the case was litigated

by Falls, who is admitted to practice in Texas. Falls explained that the remaining $311.07 in costs included $95 for the process server and postage, copying, and other hard costs incurred by the law firm. Accordingly, the Court finds that **InMode is entitled to $711.07 in costs**.

### 5. Post-Judgment Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." *Id.* "Interest shall be computed daily to the date of payment ... and shall be compounded annually." *Id.* § 1961(b). As InMode's request for post-judgment interest was not discussed at the hearing, **the Court hereby notifies Allmond that it will award post-judgment interest on any money judgment entered in this case**.

### 6. Injunctive Relief

Finally, the Court finds that **InMode is entitled to injunctive relief**. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (setting forth the factors that a plaintiff must demonstrate to be awarded injunctive relief). InMode requests that Daniel Allmond, his distributors, retailers, agents, employees, representatives, and all persons acting in concert with him, be permanently enjoined from:

> i. using, or attempting to use, any of the InMode intellectual property, including, but not limited to, the InMode Marks;
>
> ii. engaging in any false or misleading advertising with respect to InMode Products, which relief includes, but is not limited to, prohibiting the offer for sale or sale of any InMode Products, including, but not limited to, the Demo Products;
>
> iii. retaining, acquiring, or taking steps to acquire, any InMode Products, including, but not limited to, the Demo Products;

iv. advertising, selling, or taking any steps to sell, any InMode Products, including, but not limited to, the Demo Products;

v. engaging in any activity constituting unfair competition with InMode; and

vi. inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

**IV. Order Granting Time to Respond**

The Court has reflected upon its decision to direct Allmond to respond by November 22, 2021, and concluded that in light of Allmond's imminent back surgery, it will grant him additional time to respond. Therefore, the Court **ORDERS** that any response to the arguments made by Plaintiff's counsel at the November 16, 2021 hearing or to the findings and conclusions of the Court as to damages, costs, attorneys' fees, and injunctive relief, **must be filed by 12:00 PM on December 3, 2021**. **The Court will not look favorably upon any further request for extension of time.**

The Clerk of Court is **DIRECTED** to add Daniel Allmond to the docket as a pro se litigant in this case. The Clerk of Court shall enter the mobile phone number and email address on file with Courtroom Deputy Muzza as Allmond's contact information. The Clerk of Court is further **DIRECTED** to email a copy of this order to Allmond.

**It is so ORDERED this 17th day of November 2021.**

*Jason Pulliam*
_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**